**William E. McCOY and Mary L. Tuttle, Appellants (Defendants),**

**Karen E. McCoy, (Defendant),**

**v.**

**H. Mason THOMPSON and Donna J. Thompson, husband and wife, and Anthony A. Lucero and Melba D. Lucero, husband and wife, Appellees (Plaintiffs).**

**No. 83–135.**

Supreme Court of Wyoming.

March 12, 1984.

---

E. James Burke and Thomas E. Campbell of Hanes, Gage & Burke, P.C., Cheyenne, for appellants.

Don W. Riske of Riske & Edmonds, P.C., Cheyenne, for appellees.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN, and CARDINE, JJ.

BROWN, Justice.

Appellees purchased an apartment building from appellants. At the time of the transaction appellants were licensed real estate sales persons. Because of an incorrect property description a lawsuit resulted. The trial court found that appellants were not competent in selling the property

to appellees and assessed a statutory penalty against them.

According to appellants the issues are:
"I. Whether the trial court erred as a matter of law in assessing a $13,000 penalty against the appellants.

"A. Whether the trial court erred in finding the appellants were incompetent under W.S. § 33-28-111(a)(ix).

"B. Whether the trial court erred in applying W.S. § 33-28-114(b) to impose a penalty on the appellants under the circumstances of this case.

"II. Whether the appellants, when acting as principals in the sale of their own real estate, are exempt from the provisions of the real estate license act pursuant to W.S. § 33-28-103 and W.S. § 33-28-104."

We will reverse.

In a real estate transaction appellees purchased from appellants an apartment building. The contract for sale, the deed and escrow instructions all contained an incorrect property description. The description was supplied by appellants. They were owners and developers of the property and also held Wyoming Real Estate Sales Licenses. Because of the erroneous legal description a title insurance policy provided for in the contract for sale could not be issued to appellees. The incorrect description created a cloud on appellees' title, and prompted them to file a complaint against appellants setting out seven causes of action.

At trial some of the causes of action were resolved in favor of appellees and some in favor of appellants. In the resolution of the fifth cause of action in favor of appellees, a statutory penalty was awarded to appellees. The only part of the judgment appealed from is the assessment of the statutory penalty against the appellants.

Appellees' cause of action for a statutory penalty was based on the Real Estate Brokers and Salesmen Act, § 33-28-101 to 33-28-117, W.S.1977. Section 33-28-111(a)(ix), W.S.1977, provides for the suspension or revocation of a Wyoming real estate license for:

"Any conduct in a real estate transaction which demonstrates bad faith, dishonesty, untrustworthiness or incompetency."

Section 33-28-114(b), W.S.1977, states:
"In case any person shall have received any money or the equivalent thereof as a fee, commission, compensation or *profit by or in consequence of a violation of any provision of this act* [§§ 33-28-101 to 33-28-117], he shall, in addition, be liable to a penalty of not less than the amount of the sum of money so received and not more than three (3) times the sum so received as may be determined by the Court, which penalty may be recovered in any court of competent jurisdiction by any person aggrieved." (Emphasis added.)

The trial court found that appellants were in violation of § 33-28-111(a)(ix) because of incompetency and assessed a $13,000 penalty as provided for in § 33-28-114(b).

The critical elements in a cause of action for a statutory penalty are:

1) Proof of the sales person's incompetence.

2) Receipt by sales person of a fee, compensation, commission or profit.

3) In consequence of a violation of the Real Estate Brokers and Salesmen Act.

It does not appear from the record that appellees proved incompetency or that they proved the profit received from the transaction was a consequence of appellants' violation of the act. Incompetency is not defined in the statute. We must assume, therefore, that the legislature intended the usual and ordinary meaning of the word.

When construing a statute the words used in the statute are to be given their plain and ordinary meaning unless otherwise indicated. *Wyoming State Department of Education v. Barber*, Wyo., 649 P.2d 681 (1982). The term "incompetent" is general in its meaning and stand-

ing alone conveys no information of the particular act of omission, or lack of qualification which would permit the conclusion that an individual is incompetent. *County Board of Education of Clarke County v. Oliver*, 270 Ala. 107, 116 So.2d 566 (1959). Negligence is not synonymous with incompetency. "There is a clear distinction between negligence and incompetency, and they are not synonymous, for one may be entirely competent to do certain work or perform certain acts and yet be negligent in doing or performing them; the most competent may be negligent. * * * " 65 C.J.S. Negligence § 1(8), p. 451 (1966). However, one who is habitually negligent may, because of that, be incompetent. *McGowin v. Howard*, 251 Ala. 204, 36 So.2d 323 (1948).

The dictionaries most commonly used define incompetency as:

"Lack of ability, legal qualification, or fitness to discharge the required duty. * * * " Black's Law Dictionary, p. 688 (5th ed. 1979).

"Inefficiency; a lack of some requisite ability; * * * the absence of a physical, moral or intellectual quality, incapacitating one to perform the duties of his office, characterized by gross neglect of duty or gross carelessness in the performance of duty. * * * " Ballentine's Law Dictionary, p. 602 (3d ed. 1969).

"Lack of ability or fitness to discharge a required duty." 1 Bouvier's Law Dictionary, p. 1528 (3d rev. ed. 1914).

"The quality of being incompetent [defined, inter alia, as] * * * lacking specific qualifications to perform a legal function or duty or exercise a legal right * * * ." Webster's Third New International Dictionary, p. 1144 (8th ed. 1979).

In discussing a statute almost identical to § 33–28–114(b), the court in *Van Ettinger v. Pappin*, 180 Mont. 1, 588 P.2d 988, 996 (1978), said:

"We agree that the Real Estate License Act should be construed to lend maximum efficacy to the enforcement of the fiduciary relationships involved in this profession. [Citation.] This enforcement should not be taken lightly. Yet, the heavy penalties allowed to be added to common law damages would certainly envision that willful misconduct be present as opposed to a natural or what may be characterized as an 'honest' mistake, regardless of the argument that another course of conduct or the lack of some negligence would have avoided the situation complained about."

The Montana court was speaking of a violation of the Real Estate Brokers and Salesman Act (M.C.A. § 37–51–321 (1981)).

The Montana case is similar to the case here. We agree with the reasoning of the Montana court. We cannot agree with the district court that furnishing an incorrect property description rendered appellants incompetent. There may have been negligence, but not incompetency, according to the cases we have cited and the ordinary and usual definition of incompetency. The statutory penalty is based on incompetency, not on negligence.

A single transaction or dereliction of duty under certain circumstances might be sufficient to reveal a general lack of ability to perform required duties, thereby supporting a finding of incompetency. However, a single honest failure in the performance of one's duties does not without more amount to incompetency. Here appellants were negligent in their failure to provide a correct description; however, there was nothing in the entire transaction that indicated a general lack of ability to perform the required duties. The error was not detected by others who inspected the property and examined the sale instruments. This appears to be a single honest mistake. In fact, in another context the court found in its judgment that it was a mutual mistake. A finding of mutual mistake is inconsistent with a finding of incompetency. We hold that there was insufficient evidence to find that appellants were incompetent.

Not only have appellees failed to produce evidence that appellants were incompetent, they have also failed to produce

evidence that a fee, commission, compensation or profit was derived as a consequence of incorrect description. This latter item of proof is an element that must be proved for a statutory penalty. Section 33–28–114(b), supra. There is nothing in the record to show that because of the incorrect legal description a sale was made and appellants realized a profit. Succinctly, there is no causal connection between the incorrect description and the profit realized by appellants.

Because of our determination of appellants' first assignment of error we need not address the second issue.

Reversed.

ROSE, Justice, dissenting, with whom CARDINE, Justice, joins.

"Real estate brokers and salesmen are licensed by the State of Wyoming and required to meet high standards of honesty, integrity, trustworthiness and competency. Theirs is a regulated profession. Failure to satisfy those standards is ground for suspension or revocation of a real estate broker's or salesperson's license. *An act licensing real estate agents must be construed in the light of an obvious purpose of protecting the public in the handling of important and valuable transactions relating to real property. Toavs v. State*, Wyo., 635 P.2d 1172 (1981)." (Emphasis added.) *Hagar v. Mobley*, Wyo., 638 P.2d 127, 136 (1981).

Because I believe that the finding of incompetency and the assessment of the statutory penalty against appellants by the trial court are supported by the evidence and promote the purpose of the Real Estate License Act of 1971, §§ 33–28–101 to 33–28–117, W.S.1977, as set out in *Hagar v. Mobley*, supra, I would have affirmed.

We are asked, in this case, to construe § 33–28–111(a)(ix), W.S.1977, which authorizes certain sanctions where the licensee is found guilty of:

"Any conduct *in a real estate transaction* which demonstrates bad faith, dis-

honesty, untrustworthiness or incompetency." (Emphasis added.)

By its plain language, the statute penalizes conduct rising to the level of incompetency *in a particular transaction.* The majority recognize that a single act of misconduct under certain circumstances can suffice to demonstrate incompetency, and this concept is supported by decisions from other jurisdictions. *Greene v. Real Estate Commission*, D.C.App., 263 A.2d 634 (1970); *Lewis Realty, Inc. v. Wisconsin Real Estate Brokers' Board*, 6 Wis.2d 99, 94 N.W.2d 238 (1959); *Goodley v. New Jersey Real Estate Commission*, 29 N.J.Super. 178, 102 A.2d 65 (1954). However, the majority appear to embrace a standard of "willful misconduct" to be applied in the determination of incompetency in a single transaction such as the transaction involved in the case at bar. See the majority's reliance on *Van Ettinger v. Pappin*, 180 Mont. 1, 588 P.2d 988 (1978).

I am unable to agree that the legislature, in enacting this law to protect the public from the inept handling of real estate transactions, intended to place such a stringent burden of proof on the complainant. *Van Ettinger v. Pappin*, supra, upon which the majority rely, is the only case that I have been able to find which requires proof of willful or intentional behavior to support the imposition of a penalty under the real estate license act. Most courts, in construing statutes which regulate professional conduct, distinguish between punishable incompetence and intentional acts of wrongdoing. *Helm v. Warner*, Ky.App., 597 S.W.2d 159, 160 (1980).

For example, in *Goodley v. New Jersey Real Estate Commission*, supra, the corporate seller of real property had obtained a survey which was inconsistent with a title policy on the property as well as with the deed into the grantor. The licensed real estate broker, who was also president of the corporate grantor, prepared a warranty deed which, by map and references to the map, purported to convey the tract of land as indicated by the survey. The court up-

held the commission's finding that such negligence amounted to incompetency:

" * * * He should have ascertained why the exception set forth in the title policy and the deed did not show up on the survey. We conclude there was sufficient proof of negligence by him in connection with his profession, to sustain a finding of incompetency." 102 A.2d at 67.

In *Greene v. Real Estate Commission,* supra, the licensed real estate broker had accepted from a client a deposit of $500, but had failed to promptly return the deposit when it appeared that the sale could not be made. In affirming the 15-day suspension of the broker's license, the court said:

"The Commission could properly conclude upon its findings that petitioner's careless and callous failure to inform his client of the reasons for the difficulty in repaying the deposit, of which he was a trustee, [citation] constituted such incompetence and untrustworthy conduct as to endanger the public interest." 263 A.2d at 635.

*Lewis Realty, Inc. v. Wisconsin Real Estate Brokers' Board,* supra, represents another instance in which a court upheld the administrative board's finding of incompetence in the absence of willful misconduct. There, the court concluded that incompetency was demonstrated where the broker obtained an unsigned purchase offer from prospective buyers. The court affirmed the board's order suspending the broker's salesman's license for one month.

In the instant case, the trial court found that appellants had several opportunities to discover the misdescription of the property since they had developed the project and were familiar with maps, plans and specifications. The trial court concluded that the failure of appellants to double check and cross check the legal description to insure its accuracy amounted to incompetency. In light of (1) the statutory language which contemplates a demonstration of incompetency in the particular transaction, (2) the high standard of care to which real estate licensees are held, *Hagar v. Mobley,* supra, (3) the trial court's factual conclusion that the misconduct was more akin to incompetency than to mistake, and (4) the vital importance of strictly accurate legal descriptions in real estate transactions, I would have upheld the trial court's conclusion that the failure of appellants to accurately describe the property in pertinent legal documents amounted to incompetency under § 33–28–111(a)(ix).

The majority also conclude that this case warrants reversal because the appellees failed to prove that appellants had realized their profits in consequence of the incorrect legal description. A causal connection between the misdeed and the profits must be demonstrated, before the court can assess a penalty under § 33–28–114(b), W.S.1977:

"In case any person shall have received any money or the equivalent thereof as a fee, commission, compensation or *profit by or in consequence of a violation of any provision of this act* [§§ 33–28–101 to 33–28–117], he shall, in addition, be liable to a penalty of not less than the amount of the sum of money so received and not more than three (3) times the sum so received as may be determined by the court, which penalty may be recovered in any court of competent jurisdiction by any person aggrieved." (Emphasis added.)

In construing this provision, it is necessary to distinguish between the various acts specified in § 33–28–111(a)(ix) as grounds for the imposition of a penalty. "Incompetency," unlike "bad faith," "dishonesty," or "untrustworthiness" is not a characteristic which might be assumed by the broker in an effort to reap profits. Accordingly, it would seem logical to focus upon whether appellants received their profits "by" their misdescription of the real estate, rather than "in consequence of" the misdescription. Section 33–28–114(b), supra. Appellees relied on appellants to furnish a correct legal description and testified that they would not have purchased the apartment had they known the description to be wrong. Therefore, appellants, by

supplying legally deficient documents which they held out as being accurate, caused appellees to purchase the apartment and to confer a profit on appellants. This construction of the statute is consistent with those cases which hold that actual damages or harm need not be proven in order to assess statutory penalties for a broker's incompetency. *Lewis Realty, Inc. v. Wisconsin Real Estate Brokers' Board,* supra.

An affirmance in this case would, in my opinion, have promoted the purpose of the Real Estate License Act of 1971 to protect the public from unprofessional practices in the handling of real estate transactions. As we said in *Hagar v. Mobley,* supra, 638 P.2d at 138:

> "Realtors, just like doctors, lawyers, engineering consultants, and builders, hold themselves out as professionals; it is their job to know their profession. Peo-

ple rely on and trust them. Failure to comply with either the accepted standards in the field or the standards society is willing to recognize as acceptable, is actionable."

CARDINE, Justice, dissenting.

I join in the dissent of Justice Rose.

I would hold that § 33–28–111(a)(ix), W.S.1977 [1] concerns conduct in the real estate transaction involved in this litigation. If incompetency appears from that transaction, the judgment of the district court ought to be affirmed. For these reasons, I join in the dissent of Justice Rose.

---

**1.** Section 33–28–111(a)(ix), W.S.1977, provides: "Any conduct in a real estate transaction which demonstrates bad faith, dishonesty, untrustworthiness or incompetency."